S. A. AND J. ROLL JOHNSON v. T. J. WEATHERFORD ET AL.

Decided January 10, 1903.

**1.—Judgment Lien—Issuance of Execution Yearly.**

Under the Act of November 6, 1866 (2 Pasch. Dig. Laws, art. 7005), requiring that in order to preserve the lien of a judgment on real estate of the debtor, execution shall be issued each year on the judgment, the insolvency of the judgment debtor does not excuse a failure to have executions so issued.

**2.—Probate Court—Jurisdiction—Decedents' Estates.**

Where an administration, under a will, was had in the probate court on the community estate of a deceased husband, the fact that the probate claim docket did not show that any claims were ever presented against the estate did not of, itself suffice to show that the court had no jurisdiction over the estate.

**3.—Same—Probate Sale—Widow's Allowance—Presumptions.**

Since the probate court has, under certain circumstances, the power to make an allowance for the widow and children of the decedent, and to order a sale to raise the amount so allowed, it will, in a collateral suit, be presumed in favor of a purchaser at such sale that the conditions existed which authorized the order for such a sale.

Error from the District Court of Dallas. Tried below before Hon. Thos. F. Nash.

*Jeff Word*, for plaintiffs in error.

*Gano, Gano & Gano* and *Coke & Coke*, for defendants in error.

BOOKHOUT, ASSOCIATE JUSTICE.—This is an action of trespass to try title to a certain tract of land fully described in the petition of T. J. Weatherford, filed in the District Court of Dallas County, Texas, on February 2, 1899. The defendants in said suit were J. Roll Johnson, S. A. Johnson, F. P. Fee and Sanger Bros., a firm composed of Isaac Sanger, Phillip Sanger and Alec Sanger. Sanger Bros. were made parties to said suit by reason of having executed a general warranty deed to T. J. Weatherford, plaintiff praying that in event of failure to recover the said land against S. A. Johnson, J. Roll Johnson and F. P. Fee, he have judgment over against Sanger Bros. on their warranty. S. A. Johnson and J. Roll Johnson answered by plea of not guilty, and three, five and ten years limitation. Sanger Bros. answered, admitting the allegations of T. J. Weatherford's petition, and alleged that at one time they owned said land and conveyed it to T. J. Weatherford by general warranty deed for the consideration therein stated, and that at the time of said conveyance their title was good and valid. The defendant, F. P. Fee was not served with citation in the lower court, and plaintiff, T. J. Weatherford, dismissed as to him.

Said cause was called for trial on April 22, 1901, and was tried before the court without a jury, judgment being rendered in favor of the plaintiff, T. J. Weatherford, for title and possession of said land, and

in favor of Sanger Bros. for what cost had accrued against them. Defendants, S. A. and J. Roll Johnson, made a motion for a new trial, which was overruled by the court, from which ruling of the court they bring this cause to this court by writ of error.

The following evidence was introduced upon the trial: The parties agreed upon the trial that T. G. T. Kendall was the common source of title. The plaintiff introduced the following title papers: 1. Deed from T. G. T. Kendall and wife to Fred Ganzer, dated March 1, 1879, filed for record February 3, 1880. 2. Plaintiff proved that Fred Ganzer died March 30, 1896; that his estate was administered upon in Dallas County, Texas; that by order of court made in the course of administration the land in controversy herein was ordered sold, and was sold and conveyed to Sanger Bros. on the 8th day of April, 1897, for the consideration of $368. 3. General warranty deed from Sanger Bros. to the plaintiff, T. J. Weatherford. There was evidence that the land in controversy was in wild and uncultivated state, never having been in actual possession of anyone. The deed from Sanger Bros. to the plaintiff is dated April 14, 1897, filed for record January 24, 1898, and recites a consideration of $368.

The defendants, S. A. and J. Roll Johnson, introduced in evidence a judgment of the District Court of Dallas County, rendered July 7, 1871, decreeing that T. G. T. Kendall was entitled to the lands involved in this controversy, and vesting title to the same in him. They also introduced in evidence a judgment of the District Court of Dallas County, Texas, in the cause of E. W. Jackson v. T. G. T. Kendall, rendered on February 9, 1875, for the sum of $132.86. They then introduced in evidence an execution issued by the district clerk of Dallas County, on said judgment, dated May 17, 1875, to the sheriff or any constable of Dallas County, which was returned by said sheriff on the 5th day of June, 1875, no property found. Also two other executions were issued on said judgment during the year 1875, with a return to each by the sheriff of no property found. Also an execution issued on August 16, 1876, with a similar return of no property found. They then introduced an execution issued on said judgment, dated April 23, 1877, against T. G. T. Kendall, as principal, and F. M. Hanks, as surety. This execution was levied on lots or tracts of land belonging to F. M. Hanks and located in Hanks' addition to the city of Dallas, Texas. A sale of this property was made by the sheriff of Dallas County. The return, however, upon the execution, as shown by the sheriff, makes no mention whatever of any effort to find property belonging to T. G. T. Kendall. Said defendants then introduced an execution issued on said judgment above referred to on February 14, 1880. This execution was levied by the sheriff of Dallas County, Texas, on the 20th day of February, 1880, on the land in controversy, and said land was sold by the sheriff on the first Tuesday in April, 1880, to F. P. Fee, for $50. It was also proven that no copies of the judgment

vesting title in T. G. T. Kendall had ever been recorded in the county clerk's office of Dallas County. They also proved that T. G. T. Kendall was insolvent during the years 1876, 1877, 1878, 1879 and 1880.

*Opinion.*—1. The first question presented is, was the judgment of Jackson v. Kendall a lien upon the land sued for at the time Fee purchased it at sheriff's sale? The contention of the plaintiffs in error is that the said judgment was a lien upon the land when the same was levied upon on the 20th of February, 1880, under the execution issued on February 4, 1880. The contention of the defendants in error is that the plaintiff in the judgment, Jackson, had failed to preserve his lien, in that he had failed to have execution issued thereon each year. The statute which created the lien and under which the contention of plaintiffs in error arises is the Act of November 6, 1866. 2 Pasch. Dig., art. 7005. This statute has been repeatedly construed by the Supreme Court, and the effect of their holding is that, notwithstanding the issuance of an execution within one year from the time when it might have been issued, unless due diligence is subsequently used to enforce the lien it is lost; and the failure to sue out executions from year to year is held to be failure to use due diligence unless there is something in the facts of the particular case to take it out of the rule. Barron v. Thompson, 54 Texas, 235; Bassett v. Proetzel, 53 Texas, 569; Deutsch v. Allen, 57 Texas, 89. Plaintiffs in error contend that the insolvency of Kendall, the defendant in the judgment, during the years 1876, 1877, 1878 and 1879 was a sufficient excuse for failing to have execution issued for these years, and takes this case out of the general rule. This is the main contention in this case.

We are of opinion that, in order to excuse the failure to issue execution from year to year, there must have been some legal obstacle preventing the issuance of sale. This, in our opinion, is the effect of the holding in the case of Bruner v. Weston, 66 Texas, 209. The insolvency of the judgment debtor presented no obstacle to the issuance of execution on a judgment against him. In the case of Bassett v. Proetzel, supra, it was held that the bankruptcy of the judgment debtor, who had many years before conveyed away whatever interest he had in the lot therein in controversy, and whose schedule of assets showed no claim whatever thereto, presented no obstacle to the enforcement of the judgment lien against one holding the lot subject thereto, and it was held that by failure to have execution issued from year to year the judgment lien was lost. Nor did the failure of Kendall to have the judgment of the District Court decreeing him title to the land recorded, or his failure to pay taxes on the land furnish any excuse for Jackson's failure to have execution issued on his judgment each year, if he wished to preserve a lien upon the land. In our opinion, by the failure to have execution issued on the judgment of Jackson v. Kendall, from April 23, 1877, to February 14, 1880, the judgment lien on the land in controversy was lost.

2. Did the court err in sustaining objections to the evidence offered by plaintiffs in error to show a superior outstanding title in Helen Ganzer? It was shown that Fred Ganzer died in March, 1896, leaving a wife, Helen Ganzer. By the will of Fred Ganzer he left his property to his wife, Helen Ganzer, and appointed her excutrix. She refused to act as executrix under said will. The will was duly probated in the County Court of Dallas County, Texas, and Charles Kley was appointed administrator with the will annexed. An inventory and appraisement was duly filed and approved by the court. This inventory included the land in controversy, and also the homestead of Fred Ganzer and his wife, which constituted all of the real property belonging to said estate. Under order of the court the homestead was set aside to Mrs. Helen Ganzer, wife of Fred Ganzer, deceased. The court also made an allowance to her of the sum of $800 for her support and maintenance for one year. The court then, upon proper application, ordered the administrator of said estate to sell the lands in controversy at private sale, for cash, for the purpose of raising the amount of said allowance made to Helen Ganzer. The administrator, under this order, in April, 1897, sold the land in controversy to Sanger Bros. for a cash consideration of $368, which sale was approved by the probate court on April 14, 1897. After the approval of the sale a deed was duly executed to Sanger Bros. The claim docket of the probate court was offered in evidence by defendants for the purpose of showing that no claim against said estate had ever been presented to the county judge of Dallas County for approval. Upon objection the court refused to permit any of the above evidence to be introduced for the purpose of showing an outstanding title in Helen Ganzer. There was no error in this action of the court. It will be presumed that the property belonging to the estate of Fred Ganzer, deceased, was community property of himself and his wife, Helen Ganzer. The wife was not compelled to accept under the will of her deceased husband, but could elect to have the estate administered through the probate court. The fact that the claim docket fails to show that any claims against said estate had been presented to and approved by the judge did not itself show that Ganzer did not owe any debts, or that the court did not have jurisdiction over the estate. The probate court had power to fix the amount of the allowance for the support of the widow and minor children of the deceased, Fred Ganzer (Rev. Stats., art. 2037), and the court could, under certain conditions, order a sale of so much of the estate as was necessary to raise the amount of such allowance. Rev. Stats., art. 2043. It will be presumed that the conditions existed which authorized the court to order the sale. By virtue of this sale and conveyance to Sanger Bros. title to the property passed to them.

Finding no error in the record the judgment is affirmed.

*Affirmed.*