No. 2348.

## A. G. HARVEY v. N. B. EDENS.

1. EVIDENCE.—One who sues for a divided interest in surveys containing a designated quantity of land, which interest is alleged in the petition to have been set aside to him by commissioners appointed in partition proceedings, may read in evidence the decree of partition as a muniment of title, without serving the defendant with notice before trial of his intention to offer it in evidence.

2. EVIDENCE.—Secondary evidence is admissible to show the contents of a deed of assignment conveying property situated in other States, as well as property in Texas, and which deed is beyond the jurisdiction of the court. When such secondary evidence is in the shape of separate depositions of the several witnesses who prove the execution of the original deed, the fact that a correct copy of the instrument is attached to each deposition, and that no two of the witnesses swear to the same copy, is immaterial, since a comparison of the copies will verify whether they are from the same original.

3. FOREIGN ASSIGNMENT.—Though it has been held that a voluntary assignment, if executed with apt words to convey lands in a foreign jurisdiction, and in conformity with the laws of such jurisdiction, does not operate as a conveyance of real property situate beyond the limits of the State where the assignment was executed, as against creditors resident within the State where the property is situated; yet such an instrument may, as between the assignor and assignee and those claiming under the latter, pass title, whether the assignment was a statutory one or not, provided it contained apt words to convey all the property of the grantor. It is no objection to the certainty of description in such an assignment that it does not specifically describe each item of property conveyed. If it purports to convey all the property of the partnership firm making it, and that of each individual member thereof, wherever situate, it becomes a matter of evidence as to what particular property the partnership and each individual member thereof owned when the assignment was executed.

5. MORTGAGE—CONDITIONAL SALE.—Where a mortgagor conveys to a third party the equity of redemption in trust for the mortgages, and stipulates for a reconveyance of the property upon payment by him within a certain time of the amount originally secured, if the debt is extinguished and it is optional with him whether he pay or not, the transaction is converted from a mortgage into a conditional sale.

6. FACT CASE.—See facts stated in the opinion illustrative of the above proposition.

7. FAILURE OF CONSIDERATION—FACT CASE.—See opinion for facts under which it was held that if one, in consideration of his acceptance of the drafts of another, receive from such other a promissory note for the

amount, secured by mortgage, which by subsequent negotiation is converted into a conditional sale, and the drawer of the drafts afterwards conveys the mortgaged property absolutely for the benefit of the acceptor in satisfaction of such notes, the fact that the acceptance was never paid can not be urged by the mortgagor under plea of failure of consideration to defeat title derived by purchase from the assignee of the acceptor.

8. EXECUTION—LEVY—DILIGENCE.—The doctrine in Barron v. Thompson, 54 Texas, 235, and in Bassett v. Proetzel, 53 Texas, 569, which in effect hold that a failure to sue out execution from year to year, under the act of November 9, 1886, is such want of diligence to preserve a lien acquired by the rendition of a judgment as destroys the lien, reaffirmed.

9. EVIDENCE.—When the relevance of evidence to sustain an issue depends on the existence of other facts not in evidence, and no statement is made that counsel expect to establish such facts, it is not error to exclude the evidence.

APPEAL from Navarro. Tried below before the Hon. Anson Rainey.

*W. J. McKie* and *James C. Walker*, for appellant: That the plaintiffs should have given notice of their intention to offer the judgment in evidence, cited Revised Statutes, article 2257.

That the court erred in admitting the deed from Emmett to Shippman, assignee, they cited Beale v. Ryan, 40 Texas, 408, 409; Ruffier v. Womack, 30 Texas, 332; Gibbs v. Penny, 43 Texas, 560.

Mortgage will not support trespass to try title. Edrington v. Newland, 57 Texas, 627, and 61 Texas, 331.

That the instrument construed was a mortgage, and not a conditional sale, they cited 49 Texas, 462; 45 Texas, 444; 43 Texas, 563; 3 Texas, 1; 30 Texas, 342; 59 Texas, 423; 40 Texas, 408; also Russell v. Southard, 12 Howard (U. S.), 146, and Davis v. Henry, 2 Cowen, page 327.

That there was error in admitting in evidence an examined copy of the deed of assignment, they cited 45 Texas, 568 ; 2 Texas, 496; 1 Greenleaf, sec 508.

That the law does not authorize the admission of a copy of a written instrument because original is in the hands of a person who resides in another state, they cited 47 Texas, 504 ; 1 Greenleaf's Evidence, 647 and note ; 1 Greenleaf, 441; 3 Greenleaf's Evidence, secs. 295-307 ; Buel v. Loveland, 10 Pickering, 14.

That the assignment was void for want of description, they cited, Barnett v. Pool, 23 Texas, 520; 46 Texas, 623; 11 Howard, 33; 25 Texas, 397; 51 Texas, 615; 52 Texas, 403.

*Simkins & Neblett,* for appellee: That the description in the deed of assignment was sufficient, cited Burrell on Assignments, sec. 416.

That when land is conveyed subject to the privilege of repurchase on the part of the vendor and the relation of debtor and creditor ceases to exist between the vendor and vendee and the intention of the parties is simply to give for a definite time a chance of repurchase, then (in whatever form the privilege is expressed or provided for) it is a conditional sale and must be strictly complied with to defeat the title of the vendee, they cited Lucket v. Townsen, 3 Texas, 119; Alstin v. Cundiff, 52 Texas, 462; Ruffier v. Womack, 30 Texas, 338; DeBruhl v. Maas, 54 Texas 464; Chase Case, 17 Am. Dec., and notes; Glover v. Payne, 15 Wend., 518; Storey v. McMurray, 27 Mo., 113; Straton v. Sabin, 9 Ohio, 28.

That whether the deed to Emmett was a conditional sale or a mortgage depended on the intention and understanding of the parties, and was a question of fact, and such was fairly submitted by the court, they cited, Alston v. Cundiff, 52 Texas, 452; DeBruhl v. Maas, 54 Texas; Ruffier v. Womack, 30 Texas, 338; Bennett v. Holt, 6 Yerger, 6; Storey v. McMurray, 27 Mo., 113.

That, when the original instrument is in the hands of neither party to the suit, and it is beyond the jurisdiction and process of the court, and due diligence is used to procure it, its non-production was sufficiently accounted for as to authorize the admission of a copy, they cited Texas Land Company v. Williams, 51 Texas, 59; Chatham v. Riddle, 8 Texas, 167; Clifton v. Lilley, 12 Texas, 136; White v. Burney, 27 Texas, 50.

That a general deed of assignment from an insolvent debtor, for the benefit of all his creditors, made voluntary, and not by virtue of some bankrupt or insolvent law, will transfer all the property of the debtor, both real and personal, wherever situated, provided it is executed in conformity with, or not in violation of, the laws of the State regulating the transfer of real and personal property, they cited Weider v. Maddox, 66 Texas, 378; Burrell on Assignment, section 28 and note 3; People v. Chalmers, 8 New York Supreme Court (1 Hun.), 683; Livermore v. Jencks, 21 Howard, 126.

GAINES, ASSOCIATE JUSTICE. This was an action of trespass to try title, brought in the court below by appellee for the recovery of a tract of land consisting of four hundred and

eighty acres, and being the north half of James Wishart survey. The defendant Harvey was merely the tenant of his co-defendant, and pleaded not guilty.    Defendant Walker pleaded not guilty, the statute of limitation and improvements in good faith. Both parties claimed title under George Butler as the common source.    Plaintiff introduced in evidence the following conveyances:

1.   A deed of trust from George Butler to W. N. Stone, as trustee, to secure a note for four thousand dollars, payable to Duncan, Sherman & Company, due January 11, 1876.

2.   A conveyance of the legal title from Butler and wife to H. C. Emmett, dated July 19, 1875.

3.   Deed of assignment from Duncan, Sherman & Company to W. S. Shipman, dated July 27, 1875.

4.   Deed from Emmett to Shipman, dated July 26, 1886.

5.   Deed from Shipman, assignee, to plaintiff, dated July 1, 1884.

The defendants' chain of title, as introduced upon the trial, was as follows:

1.   A deed from Emiline Butler as sole heir of George Butler, of the date of February 6, 1882, to J. C. Roberts.

2.   Deed from J. C. Roberts to defendant James C. Walker, dated March 14, 1882.

The cause was submitted to a jury, and the trial resulted in a verdict and judgment for plaintiff against both defendants.

The vital question in the case is whether the conveyance from Butler and wife to Emmett was a conditional sale or a mortgage.    If a mortgage, never having been in any manner foreclosed, and the notes secured by it having been barred at the time of the trial, the title to the land remained in Butler, and his wife having been shown to be his sole heir, it passed to her, and by her conveyance to Roberts, and Roberts's deed to defendant Walker, was vested in that defendant.    But, if it was a conditional sale, then, there being no evidence that the condition was ever performed within the time stipulated, the title became absolute and became vested in plaintiff, provided it passed from Duncan, Sherman & Company, for whose benefit the deed to Emmett was made, by their assignment to Shipman. There were other questions, however, raised upon the trial, and properly brought up by the appeal to this court, and they will be disposed, as far as may be, in the order in which they are presented.

The deed of trust from Butler and wife to Stone, trustee, and also the conveyance from the same parties to Emmett, described a part of the lands conveyed as "Also nine hundred and sixty acres of land, being the divided one-half of two tracts of land of nine hundred and sixty acres, out of patents 278, 279, granted by the State of Texas to A. B. Watrous, assignee of A. McDonald and J. Wishart, situated in Navarro county, Texas, on Richland creek, and set apart to George Butler by commissioners appointed by the district court of Navarro county, March 19, 1869, recorded in county records, book D, page 352, together," etc.

After introducing the deed of trust, plaintiff offered the record of the judgment there referred to, for the purpose of identifying the land so described as the same land sued for in his action. This was objected to on the grounds that the defendants had not been served with notice that the judgment would be offered in evidence as a muniment of title, and because it was immaterial. The evidence was admitted and defendants excepted, and now assign its admission as error. But in this there was no error. It was incumbent upon plaintiff to show which half of the Wishart survey had been "set apart to George Butler by commissioners appointed by the district court of Navarro county," so as to aid the description in his deed. The judgment itself was the best evidence of its contents; so that it was clearly pertinent. The statute does not require notice to be given of the intention to introduce in evidence a written instrument. It merely provides that deeds which have been properly recorded may be admitted in evidence, without proof, by filing them three days before the trial and giving notice thereof.

The plaintiff also offered in evidence a copy of a deed of assignment made by Duncan, Sherman & Co. to W. D. Shipman, and many objections were interposed by defendants, both to the mode of proof and to the sufficiency of the deed itself to convey the title of the assignors. The deed was, however, admitted, and exceptions properly reserved. One ground of objection was that a proper predicate was not laid for the introduction of parol evidence of its contents. But this ground is not tenable. Shipman, the assignee, testified by deposition that he had the deed in his possession in the city of New York; that vast properties, situate there and elsewhere, had been conveyed to him by it; that it was his muniment of title, and that he declined to part with it. The deed of assignment being without the jurisdiction

of the court, it was not within the power of plaintiff to produce it, and secondary evidence of its contents was therefore admissible.

It was further objected that the execution of the deed was not properly proved. The copy offered in evidence purported to be signed by W. B. Duncan, W. W. Sherman and F. H. Grain, who were proved to compose the firm of Duncan, Sherman & Co., and by W. D. Shipman, the assignee, and was attested by three subscribing witnesses. Two of these attesting subscribers testified by deposition that they saw the deed signed by Duncan, Grain and Shipman, and that they signed the same also as subscribing witnesses. One of them swore that he also witnessed the signature of Sherman. Sherman also testified to the execution of the deed by himself. In addition to this, each of these witnesses deposed that the original deed of assignment was before him when his deposition was taken and attached a copy thereto, which one at least, swore he had compared with the original and knew to be a copy. This proved the others—the records showing that each was a duplicate of the others. This was sufficient to establish the execution and contents of the instrument, and it was not error to admit the copies. But appellee complains that because three copies were introduced this was error. The depositions were taken separately, and hence in order to prove the instrument it was proper to attach a copy for the purpose of complete identification. No possible prejudice has accrued to plaintiff by the introduction of these copies.

It was further objected, that the deed of assignment having been made in New York, was not sufficient to convey the title of assignors to lands lying in this State. This presents a question which is worthy of more consideration. The authorities generally agree, that an assignment made under a decree of court by virtue of the insolvent laws of one State does not pass title to real property situate in another. (Moseby v. Burrow, 52 Texas, 396, and authorities there cited; Wood v. Parsons, 7 Mich., 157; Houston v. Nowland, 7 Gill and Johnson, 480. See also Pool v. Barnett, 23 Texas, 517.) It is even held, that a voluntary assignment, though executed with apt words to convey lands in a foreign jurisdiction and in conformity to its laws for the conveyance of such property, does not operate as a conveyance of real estate lying beyond the limits of the State where executed, as against creditors resident within the State where the property is situate. Such seems to be the weight of au-

thority, when the assignment is statutory though voluntary, or when it is in violotion of the laws of the latter jurisdiction. (Osborne v. Adams, 18 Pick., 245; Wharton's Conflict of Laws, sec. 275, and cases there cited.)

But a conveyance or an assignment may be good as between the parties and void as to creditors; so that if the rights of creditors are not involved, and the deed of assignment contain words sufficient to convey the property in controversy, and it be executed with the solemnities required by the law of the place where the property is situate, 'no reason is seen why the deed should not be held to pass the title as between the assignor and the assignee and those claiming by conveyances from them. The distinction between the claim of creditors and that of the heirs or subsequent vendors of the assignor is recognized in most of the authorities. The validity of such assignments as between the parties and their privies, as to foreign lands, has been upheld in several cases; and we have found none in which the contrary doctrine is maintained. (Lamb v. Frees, 2 Pa. State, 83; Hayer v. Alexander, 108 Ill., 385; Chafee v. Fourth National Bank, 71 Me., 514; see also Burrill on Assignments, section 304.)

It is also urged that the assignment is a statutory one; but that is a question which we need not decide. Whether statutory or not, it is voluntary, and contains apt words of conveyance of all the property of the grantors. Though the laws of the State of New York may be framed to meet such a case, and though they may direct the mode in which such a trust shall be administered and the proceeds applied upon the debts, this can make no difference in a controversy in which the rights of creditors are not involved. Here the contest is between a party who claims as a purchaser from the assignee, and a defendant who claims under conveyance from the heir of the grantor of the assignors, unaffected by the claim of any creditor whatever.

It is still further objected to the deed of assignment that it does not sufficiently describe the property claimed by plaintiff to have been conveyed by it. To this it must be replied that it conveys in general terms all the property then owned by the firm of Duncan, Sherman & Co., and all the property of each member of that partnership, wherever situted; that this can be made certain by proof of what property they and each of them then owned, and that therefore the description is good. It follows

from what we have said that, in our opinion, the deed of assign-
ment was valid and effectual to convey whatever title Duncan,
Sherman & Co. had at the time of its execution in the property
in controversy to their assignee, W. D. Shipman.

The deed by its terms expressly conferred upon Shipman an
unrestricted power of sale.   He has executed that power by a
conveyance to plaintiff for value; whence it follows that plain-
tiff showed title to the land and was entitled to recover, provided
the deed to Emmett, as naked trustee for Duncan, Sherman &
Co., is to be construed either an absolute or conditional con-
veyance of the fee, and not merely a mortgage.   This brings
us to the meritorious and most important question in the case.
Plaintiff concedes that it was not absolute, but claims that it
was a conditional sale.   The circumstances surrounding the
transaction were as follows: On the sixteenth of July, 1875,
George Butler was indebted to Duncan, Sherman & Co., by
reason of acceptances on their account in the sum of sixty-five
thousand dollars, a part secured by stock in the Waco factory
and other collaterals, and thirteen thousand dollars evidenced
by two notes of nine thousand dollars and four thousand dol-
lars respectively, being secured by deeds of trust on Texas
lands executed by Butler and wife to W. N. Stowe.   The trust
deed securing the four thousand dollar note embraced the land
in controversy.   On that day, Duncan, Sherman & Co. wrote
Butler the following letter:

NEW YORK, July 16, 1875.

*To George Butler:*

DEAR SIR—We hold, as you are aware, as collateral to your
indebtedness to us, the following securities referred to in your
letter of May 10: The entire property of the Texas Cotton
Spinning and Manufacturing Company, Waco, Texas; three
thousand seven hundred and fifty acres of land in Brazoria
county, Texas; one thousand four hundred and forty-one acres
in DeWitt county, Texas; nine hundred and sixty acres in Na-
varro county, Texas, etc.   As you are still unable to redeem
these securities, we have decided to avail of the option therein
given us, and to accept the same in final settlement of your ac-
count with us, thereby closing all transactions between us,
which please confirm.

(Signed)                    DUNCAN, SHERMAN & Co.

On the nineteenth of the same month Butler and wife exe cuted the deed to Emmett. It recites that it was in considera- tion of "one dollar and certain other good and valuable consid- erations," conveyed all the lands included in the two trust deeds, and further stated it was executed subject to the Stowe deeds of trust. It was proved that the transaction was for the bene- fit of Duncan, Sherman & Co., and that the conveyance was made to Emmett, who was their clerk, merely for their conven- ience. On the same day (July 19) Butler wrote to Duncan, Sherman & Co. as follows:

*Messrs. Duncan, Sherman & Co.:*

Mrs. Butler and myself have executed the deeds prepared by your attorney to H. C. Emmett for the several tracts of land in fee, subject to the deeds of trust on the same, made to William Stowe, trustee, viz: Three thousand seven hundred and fifty acres on Oyster creek, Brazoria county, to secure the promis- sory note of George Butler to Duncan, Sherman & Co., for nine thousand dollars, due January 11, 1875; and seven hundred and thirty-eight and seven hundred and sixty acres in DeWitt county, and nine hundred and sixty acres in Navarro county, to secure promissory note of Butler to Duncan, Sherman & Co., for nine thousand dollars, payable January 11, 1876. It is un- derstood that Mrs. Butler has the privilege of taking up either or both deeds of trust, on the payment to the holders of said notes or note on or before maturity, and that no disposition will be made of the lands to any other person before the maturity of the trust deeds. It is further understood that the certificates of stock in the Houston City Company held by you, aggregating one thousand shares, be delivered over by you to Mrs. Butler, and the remainder of the obligations, stock, and promissory notes held by you as collateral to my indebtedness, be returned to me and release be given me by your house for any debt or liability of any kind due by me to your firm to this date. It is also understood   *   *   *   *   Be pleased to assent to the above in writing.
  (Signed)      _      GEORGE BUTLER.

To this Duncan, Sherman & Co. replied on the same day:

               NEW YORK, July 19, 1887.
*George Butler:*

In consideration of yourself and Mrs. Butler having executed

the deed to H. C. Emmett for the several tracts of land in fee,
subject to the deed of trust on same to Wm. N. Stowe, it is un-
derstood that Mrs. Butler has the privilege of taking up either
or both of said deeds of trust on payment to the holder of said
note or notes on or before their maturity, and that no disposi-
tion will be made of the lands to any other persons until the
maturity of the trust deeds. It is understood we assume all
liabilities due for which the factory at Waco is liable for wages
work done for or upon it.

    (Signed)                          DUNCAN, SHERMAN & CO.

On the twenty-first of July, Duncan, Sherman & Co. replying
to a letter written by Butler of the day before, which it seems,
asked a specific assent to some of the conditions stated in his
letter of the nineteenth (which he thought had been omitted in
their reply of the same date), wrote again assenting as re-
quested. Butler's letter of the twentieth was lost and is not in
evidence. The reply is not important in so far as it bears upon
this case, and is not here copied for that reason. But on the
twenty-first, the date of the last reply, Butler again wrote as
follows:

*To Messrs. Duncan, Sherman & Co.:*

    I acknowledge the receipt of your favor of sixteenth, ad-
vising that "the securities therein named and held by you as
collaterals to my indebtedness, you had decided to accept the
same in final settlement of your account with us, thereby clos-
ing all transactions between us." I beg to confirm the same,
and remain,

                           Yours truly,
    (Signed)                          GEORGE BUTLER.

This closed the correspondence, so far as the testimony shows.
A few days after this Duncan, Sherman & Co. assigned.

To make a mortgage there must be a debt to be secured. The
mortgagee must have the right to demand the money to be
paid, and mortgagor must be bound to pay it. (Hubby v. Har-
ris, 68 Texas, 91.)

It follows that if a conveyance provides for a reconveyance
upon the payment of a sum of money, and it appears the pay-
ment is to discharge an existing debt, it is a mortgage. But if
it be optional with the grantor whether he pay or not, then it is

only a conditional sale. In other words, the crucial test is whether or not there is a debt to be secured. Applying this test to the conveyance under consideration, the inquiry resolves itself into this question: Were the two debts secured by the deed of trust to Stowe intended to be extinguished in this transaction? The instrument, in the light of its circumstances, admits of two constructions; one that the intention was to let the notes remain in force as subsisting obligations, and merely to change the form of the security so as to enable the creditors, through their trustee Emmett as the holder of the legal title, more conveniently and less expensively to dispose of the lands in their satisfaction; the other is that the intent of the parties was to extinguish the debts finally by a transfer of the equity of redemption for the benefit of the mortgagees, and thereby to invest Emmett with the fee in law and the mortgagees with the fee in equity, and at the same time to reserve the right to Mrs. Butler to have a reconveyance by paying the amount of the indebtedness at or before the notes would have become due. The evidence we think strongly supports the latter construction, and makes the transaction a conditional sale. Duncan, Sherman & Co., in their first letter, claimed the right to take the securities and extinguish the debt, and to bring about this result was evidently their object in opening the negotiation. It would seem there were some subsequent negotiations in person or through agents before any other letter was written, and that this resulted in an agreement for a full settlement, but in which the debts were extinguished in consideration of a transfer of only a part of the property. The letter of Butler which is contemporaneous with the conveyance to Emmett was obviously written for the purpose of having a more explicit understanding of matters which up to that time were not evidenced by any writing. This letter shows the Waco factory was transferred, but that some other securities were to be returned to him and some to Mrs. Butler. The writer also says, in effect, that it is understood that a release was to be given him for every debt or liability due by him to Duncan, Sherman & Co. up to that date. To all the conditions in this letter they fully consented, by their letters of the nineteenth and twentieth of July respectively. The letter of Butler dated July 21, and assenting to the proposition contained in their first letter, is more difficult to explain. Why, after a negotiation of several days, and the closing of the transaction, and several intervening letters, did he answer

the first letter sent him, and assent to the propositions contained in it, although a different agreement had been entered into? It may be, that before replying, he wished to have an understanding as to what securities they claimed, or wished to transfer only such part as he considered reasonably sufficient to satisfy the indebtedness, and that having withdrawn a part and transferred the remainder, he deemed it proper to assent in writing to the first proposition so that it might be distinctly understood, that his debts were discharged so far as Duncan, Sherman & Company were concerned, and that the securities still retained by them had become their property, subject only to Mrs. Butler's right to purchase the lands within a specified time. This seems to us the most reasonable explanation.

But without discussing the evidence further, we think this sufficient to show, that the court did not err in admitting the conveyance to Emmett in evidence and in leaving it to the jury to say under all the circumstances whether it was intended to be a conditional sale or only a mortgage.

There are several assignments which assume to point out errors in the court's charge, but none of them are well taken. As to the proper construction of the conveyance to Emmett, this depends upon the question of fact, whether the purpose of the parties in making the transaction, was that the indebtedness secured by the deeds in trust should be extinguished or not. The court in its instructions made the verdict to depend upon the determination of this issue by the jury. The charge is clear, accurate and concise, and is commendable for its brevity. We think it full, also, and that no further instructions were necessary. Preliminary statements of the pleadings and issues made by them are not requisite; and in many cases they are better omitted. The conveyance introduced in evidence, and the undisputed facts that George Butler was dead, and that his widow was his sole heir, showed that plaintiff had whatever title passed to Duncan, Sherman & Company, and to Emmett by the conveyances to the latter, and that defendant, Walker, had whatever title, if any, remained in Butler, after that conveyance was executed, and after the notes matured. It was the duty of the court to instruct the jury as to the legal effect of these instruments without unnecessary verbiage; and this the court did, by telling them that if they found the Emmett conveyance a conditional sale, plaintiff was entitled to recover, but if it were a mortgage they should find for defendants.

It also appeared from the testimony in the case, that the notes for nine thousand dollars and four thousand dollars respectively, executed by Butler to Duncan, Sherman & Company, were given in consideration of their acceptances of his drafts for the same sums; and that at the time of the failure of that firm these acceptances were unpaid. At the date of the trial the assignee had paid dividends upon them amounting to twenty-nine per cent. Appellants complain, that the court erred in refusing a special instruction asked by them to the effect, that if Duncan, Sherman & Company failed to pay the drafts accepted by them, this was a failure of consideration of the Emmett conveyance, and that therefore plaintiff could not recover. But such in our opinion is not the law. The acceptances by Duncan, Sherman & Company were the consideration of the notes; and if plaintiff's theory be correct, then the extinction of the indebtedness evidenced by the note was the consideration of the conveyance to Emmett. By their acceptances Duncan, Sherman & Company became primarily liable for the payment of the drafts, and though they failed to pay, Butler had no cause of action against them, unless he had paid the drafts himself, and this, it appears from the evidence he never did. It is not necessary for us to inquire what his rights as against the land would have been had he discharged the four thousand dollar draft. Defendant Walker's own testimony shows that it is in his hands by purchase from a holder in New York City, and is still a claim against the assigned estate of Duncan, Sherman & Company, and it is to be presumed against the estate of Butler if not barred by limitation.

During the progress of the trial defendants attempted to show an outstanding title in one Latham. They offered in evidence a judgment of the district court of Navarro county against George Butler, for costs, rendered in 1871, and an execution, and sale of the land thereunder by the sheriff to Latham in 1877. This was after Butler's conveyance to Emmett, so that it could not affect the title acquired by the latter conveyance unless the lien of the judgment had been preserved. An execution was issued on the judgment in January, 1872, within twelve months from its rendition. There were other executions in 1874 and 1875, but none in 1873 and 1876.

In Barrow v. Thompson, 54 Texas, 235, this court held that the lien acquired by the rendition of a judgment, under the act of November 9, 1866, was lost unless diligence be used to enforce

it; and in the subsequent cases of Bassett v. Proetzel, 53 Texas, 569, it was decided that a failure to sue out executions from year to year showed a want of diligence, in the absence of the proof of some facts to excuse the neglect. This doctrine is expressly approved and affirmed in Deutsch v. Allen, 57 Texas, 89. The lien of the judgment against Butler was therefore lost, and the sheriff's sale to Latham did not affect the title of plaintiff in this case. It was not error therefore to exclude it.

In order to establish their plea of the statute of limitations of five years, defendants offered proof to show the occupancy of the land by a tenant of Butler, under authority from Messrs. Simkins & Simkins as Butler's agents. One of the last named firm testified that they were not Butler's agents as to this land, and that they leased to the tenant as agents for another claimant. Defendants then offered certain letters of Simkins & Simkins to Butler, in order to show that they were the agents of the latter. They were excluded by the court, and their exclusion is assigned as error. The evidence was only pertinent in order to assist in making out the plea of the five years limitation. But the defendants neither proved payment of taxes nor offered to prove such payment. When the relevancy of testimony depends upon the existence of other facts, and no evidence is offered to establish such facts, and no statement made that counsel expects to prove them, it is not error to exclude the testimony.

The assignments in this case are very numerous, and to follow them in detail would extend this opinion beyond any proper limits. All have, however, been considered, and we find no error that requires a reversal of the judgment. The determination of the points discussed disposes of many of the assignments which are not herein noticed, and we think it sufficiently appears from the opinion that upon the meritorious questions the court below committed no error. To state the whole case briefly: The assignment was fully proved as at common law and the copies correctly admitted in evidence, whether statutory or not, as between the parties and all third persons except creditors, it conveyed the land in controversy to the assignee and the court correctly submitted the vital issue in the case in a proper charge, and the jury found for plaintiff. There being no error in the rulings of the court prejudicial to appellants the judgment must be affirmed.          *Affirmed.*

Opinion delivered December 13, 1887